HARRY W. CRAIG AND MINNIE VELMA CRAIG *v.* SABURO UYEOKA AND UNITED STATES FIDELITY AND GUARANTY COMPANY.

No. 2104.

ARGUED NOVEMBER 22, 1933.        DECIDED DECEMBER 19, 1933.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

The defendant Uyeoka entered into a contract for the erection of a building for the plaintiffs and the defendant corporation became the surety on a bond given to the plaintiffs for the faithful performance of the contract of construction. The building was completed on May 1, 1930. This is an action on the bond for the recovery of damages for the loss suffered by the plaintiffs by reason of alleged partial nonperformance of the contract by Uyeoka. The trial was had without a jury and the presiding judge rendered judgment for the plaintiffs in the sum of $1758.49, together with interest and costs or a grand total of $2115.72. Thereupon the defendants brought the case to this court upon a bill of exceptions.

The Fiebig company furnished materials that were

used in the construction of the building to the amount of $795.43 and the Smith Lumber Company to the amount of $212.96, or a total of $1008.39. On June 14, 1930, before the expiration of the statutory period of forty-five days during which notices of lien were permitted by law to be filed, these two companies made demand upon the plaintiffs for the payment of the amounts due them, accompanying the demands with threats to file liens in the event of nonpayment. Thereupon the owners paid these two bills and their claim for reimbursement of these amounts by the defendants was sustained in the judgment rendered.

While these two claims of the materialmen were of a lienable nature, no liens had as a matter of law attached, at the time of payment, to the building or to the land upon which it stood. As has been held by this court liens for materials and labor used in the construction of a building do not attach to the building or to the land by mere reason of the fact of the furnishing of the material or the labor but only after compliance with two other statutory prerequisites, to-wit, the filing in the office of the clerk of the circuit court where the property is situated of a notice of the lien and the service upon the owner of the property of a copy of the notice. § 2892, R. L. 1925; *Lucas* v. *Redward*, 9 Haw. 23; *Lewers & Cooke* v. *Jones*, 25 Haw. 214. And the lien is not enforceable by judicial proceedings except after demand upon the owner and refusal of payment of the amount due. §2895, R. L. 1925; *Lewers & Cooke* v. *Fernandez*, 23 Haw. 744; *Lewers & Cooke* v. *Wong Wong*, 24 Haw. 39. The proceeding is somewhat technical, the statute must be complied with in order to fully create a lien and to render it enforceable and it does not necessarily follow that because there is an attempt at compliance the attempt will succeed. Instances have occurred where attempts

of that nature have proved to be failures. The contractor in the case at bar had undertaken, as a part of his contract, to deliver the building not only completed but free of liens. The surety was entitled to the full statutory period of forty-five days from the completion of the building in which to cause such arrangements to be made as might be necessary or possible for the avoidance of the creation of liens and it was also entitled to the benefit of the failure, if any, on the part of the materialmen, for whatever reason, to take the steps required by law in order to bring the liens into existence. At the time of the making of the threats and of the payment, notice of lien had not been filed and there were no liens in the two instances under consideration. The payments by the plaintiffs must therefore be deemed to have been voluntary and the plaintiffs are not entitled to recover for the two amounts so paid. See *Morley* v. *Carlson,* 27 Mo. App. 5, 8, 9; *Simonson* v. *Thori,* 31 N. W. (Minn.) 861, 862.

After the building had been constructed to the extent that installments aggregating $5300 had been paid on account of the contract price of $8000 in complete accordance with the requirements of the contract, there were various occasions when the work practically came to a standstill, due in some instances to refusal of laborers to work on the job for the contractor and in other instances to the inability of the contractor, for lack of credit, to purchase needed materials. On each of these occasions the owners promptly notified one Herman Luis, who in these matters was acting for the insurance company, of the defaults of the contractor. On some of these occasions, with reference to lack of labor, Mr. Luis said that he would speak to the contractor and endeavor to obtain a resumption of the work. On other occasions, with reference to materials, Mr. Luis, as the court below

found, authorized and requested the owners to purchase the materials in their own names and to pay for them, adding, "We must carry on." In pursuance of these authorizations and requests the owners purchased materials and paid for them. It is admitted that the materials so purchased were used in the construction of the building. The judgment rendered in favor of the plaintiffs included these items.

The bond contains the following provision, among others: "In the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of the said contract, the obligee shall promptly, and in any event not later than thirty days after knowledge of such default, deliver to the surety at its office in the city of Baltimore, written notice thereof with a statement of the principal facts showing such default and the date thereof." It is admitted that this provision was not complied with and the insurance company claims that therefore it is not liable for these last mentioned items. The circuit judge found from the evidence that this provision had been waived. While there was some evidence which would have sustained a finding, if it had been made, that the authorization granted by Mr. Luis extended only to expenditures within the total of $2700 remaining unpaid on the contract price, nevertheless the evidence as adduced was such as to support the finding which was made that there was no such limitation in the authorization granted. Mr. Luis had actual knowledge of the defaults of the contractor. He was promptly notified of them by the owners. When he was notified of the fact that the contractor could not obtain materials on credit at the places where he was accustomed to purchase such materials he did not suggest that an effort be made by the contractor to obtain materials at other places but authorized the owners to pur-

chase them in their own names from the firms with which the contractor was accustomed to deal. Nor did he suggest that written notice of the default be forwarded to the head office in Baltimore, Maryland, but took the view that progress must be made, without delay. In his own words, "We must carry on." The insurance company was authorized, by the express terms of the bond, in case of default on the part of the contractor "to assume and complete, *or procure the completion of,* said contract." It exercised this power to procure the completion of the building when it requested the owners to purchase materials which were absolutely necessary and to pay for them. It could have authorized some other contractor to do this but chose the method of authorizing the owners.

It was stipulated at the trial that when the contract of insurance was entered into the Henry Waterhouse Trust Company was "the general agent" of the insurance company and that thereafter the Bonding and Insurance Agency, Limited, also a corporation, became "the general agent" of the insurance company; that while the Waterhouse company was the agent Mr. Luis was the person in active charge under that company of its insurance and guaranty business and that during the time when the Bonding and Insurance Agency, Limited, was the agent Mr. Luis was its manager. In the statement of these stipulations the parties did not define the term "general agent" as used by them. It must be assumed that they meant, in distinction to a special or particular agent, an agent "who is employed to transact generally all the business of the principal in regard to which he is employed, or in other words to do all acts connected with" the "employment or to transact all the business of his principal * * * in a particular place." 2 C. J. 427; 1 A. & E. Ency. L. 985. Such a general agent is authorized, in the absence of limitations to the contrary, to do all

that is necessary or customary for the transaction of the business of his principal. The main office of the defendant insurance company was in Baltimore, Maryland. The building was constructed on the Island of Oahu, more than five thousand miles distant. It was reasonably necessary, under those circumstances, that the general agent in Honolulu should take cognizance of each default of the contractor as it came to his knowledge and should act thereon. The only other alternative course would have required long delays after each default and before resumption of construction. There was no express provision in the bond that none of its terms could be waived except by the officials in Maryland. We think that Mr. Luis, upon the stipulations made, was authorized to waive the requirement of written notice to the office in Maryland and that there was evidence sufficient to sustain the finding that the requirement was in fact waived.

The essential allegation in the declaration upon which the plaintiffs seek to recover is that the contractor "failed to pay materialmen and laborers for materials furnished and labor performed in the carrying out of the said contract and the erection of the said building for the plaintiffs herein and that by reason of the failure of the contractor to pay the said materialmen and laborers the plaintiffs herein have been compelled and forced to make these payments." The proof is, not that the contractor secured materials but failed to pay for them and that thereafter the plaintiffs were compelled to pay for the materials, but that the contractor was unable to furnish the materials and that upon the authorization and request of the insurance company the plaintiffs purchased the materials on their own credit and paid for them. There is a material variance between the allegation and the proof. The allegation should be amended in order to

920

justify a judgment upon proof such as that presented.

The judgment is set aside and a new trial is granted.

*C. A. Gregory* (*Smith, Wild & Beebe* on the brief) for plaintiffs.

*N. M. Newmark* (*Robertson & Castle* on the briefs) for defendants.